UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KATHIE PAULEY,

       Plaintiff,

v.                                                                    Case No. 07-11947
                                                                      Hon. Sean F. Cox

DIRECT CONTACT, INC.,
and JERRY SHEPPARD,

       Defendants.

_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for summary judgment. Both

parties have briefed the issues and a hearing was held May 15, 2008. For the following reasons,

the Court **GRANTS** Defendants' Motion for summary judgment.

## I.    BACKGROUND

This action arises out of Plaintiff's termination from employment. Plaintiff, Kathie

Pauley, was employed by Defendant Direct Contact, Inc., ("Direct Contact"). Direct Contact is a

taxi cab company. Defendant Jerry Sheppard ("Sheppard") is the sole owner of Direct Contact,

Inc.

Plaintiff began working as a general manager for Direct Contact in June 1997. As the

general manager, Plaintiff handled the accounts payable, accounts receivable, hiring and firing of

drivers, etc. Plaintiff essentially handled the day-to-day operations.

Plaintiff suffered from a chronic panic disorder, which Sheppard was aware of when he

hired Plaintiff. Plaintiff's disorder did not interfere with her ability to perform the essential functions of her job.

In February 2006, Plaintiff claims Sheppard's treatment of her drastically changed. Plaintiff claims that Sheppard routinely commingled his business and personal funds. On February 28, 2006, Sheppard took approximately $2,000 in cash that Plaintiff had been preparing for deposit in the bank. Plaintiff protested telling Sheppard that if he took the money she would not be able to pay the company's bills. Plaintiff contends she objected to Sheppard pocketing cash on several occasions. According to Plaintiff, from that point on, Sheppard began treating her differently.

Plaintiff was not at work on May 17, 2006. On May 18, 2006, Defendants received a faxed letter from Dr. Ronald Trunsky stating that he recommended Plaintiff take a medical leave of absence beginning on May 17, 2006, because of stress at work, etc. Plaintiff did not call Defendants to request leave. Sheppard called Plaintiff at home yelling at her and using profanity. He told Plaintiff she was crazy and she was not getting any money out of him. He told her she was "done," which Plaintiff took to mean she was terminated.

Defendants contend that on May 18, 2006, Plaintiff's position was eliminated for financial reasons. Following that date, Defendants claim there was a restructuring and Direct Contact was replaced by a new company, DC Cabs. Sheppard thereafter had dispatching done by computer from a different location.

On June 29, 2006, Plaintiff filed a worker's compensation claim alleging she has been continuously disabled from May 17, 2006, because repeated harassment by Sheppard significantly aggravated her emotional disability.

On March 29, 2007, Plaintiff filed a Complaint in the Wayne County Circuit Court

alleging: (1) interference in violation of the Family and Medical Leave Act ("FMLA"); (2)

retaliation in violation of the FMLA; (3) discrimination in violation of the Persons With

Disabilities Civil Rights Act ("PWDCRA"); (4) failure to accommodate in violation of the

PWDCRA; and (5) intentional infliction of emotional distress. Defendants removed the action to

this Court on May 3, 2007. On March 13, 2008, Defendants filed the instant Motion for

summary judgment as to all of Plaintiff's claims. On April 16, 2008, Plaintiff filed a Response.

Plaintiff agrees to dismiss her claim for intentional infliction of emotional distress. Plaintiff

opposes summary judgment on the remaining claims.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have

[the] effect of establishing or refuting one of the essential elements of the cause of action or

defense asserted by the parties, and would necessarily affect application of appropriate

principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d

171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the

nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor.

*Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

III.   ANALYSIS

A.   **FMLA**

**Plaintiff's FMLA claims fail because she does not establish that Direct Contact is a covered employer.**

In order to fall within the FMLA, the plaintiff must work for a covered employer, defined as "any person engaged in commerce or in any industry or activity affecting interstate commerce who employs 50 or more employees [within 75 miles of the worksite] for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4).  Defendants argue that Plaintiff's claims under the FMLA must be dismissed because Direct Contact is not a covered employer because it has less than 50 employees.

Plaintiff argues that Sheppard's various companies should be treated as an integrated employer to reach the numerosity requirement.  Plaintiff contends that Sheppard commingles the funds of his various other companies.  Plaintiff also argues that several of the allegedly separate companies share a corporate headquarters.

The Sixth Circuit recently addressed the integrated employer analysis in the FMLA context in *Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008).  In *Grace*, the plaintiff alleged FMLA violations, in addition to discrimination claims.  The plaintiff was an employee who had been provided by a staffing agency to a design firm.  The design firm failed to reinstate the plaintiff when she returned from a medical leave.  The court noted that there are two theories for aggregating the employees of two entities for purposes of the FMLA numerosity requirement, both are contained in 29 CFR § 825.104(c):

> (c) Normally the legal entity which employs the employee is the employer under FMLA.  Applying this principle, a corporation is a single employer rather than its separate establishments or divisions.

4

(1) Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the "joint employment" test discussed in § 825.106, or the "integrated employer" test contained in paragraph (c)(2) of this section.

(2) Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

(i) Common management;
(ii) Interrelation of operations;
(iii) Centralized control of labor relations; and
(iv) Degree of common ownership/financial control.

In *Grace*, the court found the plaintiff failed to establish that the staffing and design agencies were integrated employers. The court noted that while the two entities shared a relationship with the plaintiff, "the mere fact that two entities both communicated with a single employee does not mean that their employment relations, as a whole, are interrelated, as the regulations contemplate." *Grace*, 521 F.3d at 665. The court pointed out that there was no evidence that one of the entities oversaw any of the corporate decisions of the other entity. Further, the court pointed out that the two entities maintained separate offices. The nature of the work of the two companies was also completely different. The court found they were not integrated employers.

In this case, Plaintiff alleges that Sheppard is the owner of several entities, including several cab companies, a school bus division, luxury tour bus division, and an automotive maintenance company. Each of these entities are separate corporations. Plaintiff submits

Sheppard's testimony that he "may have loaned from one company to another" to make payroll. [Defendants' Exhibit A, p.109]. Sheppard was also asked if he had ever used Direct Contact funds to make payroll and he denied that he had. *Id.* Plaintiff testified in her deposition that Sheppard was her only supervisor and that she did not receive orders from managers of other entities.[1] [Defendants' Exhibit B, p.152]. However, Plaintiff did agree that the companies owned by Sheppard worked together and that "all of the money was housed in one building." *Id.* at pp.152-153. Plaintiff also submits testimony from Wayne Waldecker, the former cab manager for Trinity, that Trinity and Direct Contact were "sister companies." [Response, Exhibit 8, Waldecker, p.5].

The evidence submitted by Plaintiff is insufficient to establish that Direct Contact and Sheppard's other businesses were an integrated employer. By Plaintiff's own argument, she handled the day-to-day operations of Direct Contact. She claims she oversaw the dispatchers; leased the cabs to the drivers; hired the drivers; collected the money; paid the bills; handled the banking; handled accounts payable and receivable; readied the cabs for inspection; insured the vehicles; and purchased vehicles for the company. [Response, p.1-2, n.2]. She also testified that she did not take orders from managers of Sheppard's other entities. Plaintiff does not offer evidence of common management between Direct Contact and Sheppard's other entities.

Plaintiff also does not offer any evidence of interrelation between Direct Contact and Sheppard's other entities. While Plaintiff offers testimony that Sheppard made loans among his

_____

[1] Plaintiff did testify that if a manager from another business called her and told her that *Jerry said* to perform a particular task, she would do it. However, Jerry was Plaintiff's boss and the owner of Direct Contact, the fact that he may have relayed messages through managers of his other companies does not mean that those other entities were exercising any control over Direct Contact. [Response, Exhibit 8, p.152, Pauley].

businesses, Plaintiff offers no evidence that Direct Contact itself made or received funds from

the other entities, or that any other entity had financial control over Direct Contact. That

Sheppard allegedly used Direct Contact's funds for personal use may be relevant to an argument

to pierce the corporate veil, but it is not relevant to deciding whether a separate entity exercised

financial control over Direct Contact. While there is common ownership via Sheppard, Plaintiff

does not offer evidence of common financial control. She claims that she made purchases for the

cabs, she handled accounts receivable and payable, and did the banking. Plaintiff's suggestion

that all of the money was housed in one building is vague and does not specifically allege that

Direct Contact's finances were controlled by any of Sheppard's other entities.

Plaintiff also does not allege centralized control of labor operations. She worked solely

in the Detroit facility, which apparently did not house any of Sheppard's other entities. Plaintiff

handled much of the labor relations aspects of Direct Contact. She hired and fired the drivers,

and purchased and leased the cabs. There is no evidence that any of the other entities were

involved in these processes. Plaintiff testified that she had "total freedom to run the company."

[Response, Exhibit 8, p.46 Pauley].

There is no evidence that any of Sheppard's other businesses exercised control over the

corporate decisions of Direct Contact such that they should be considered an integrated

employer. There is also no evidence that Direct Contact had 50 or more employees at the time of

Plaintiff's termination. Accordingly, because Plaintiff fails to establish that Direct Contact is a

"covered employer" within the meaning of the FMLA, Defendants are entitled to summary

judgment on Plaintiff's FMLA claims.

**B.    PWDCRA**

Plaintiff makes two claims under the PWDCRA. Plaintiff's first claim is a failure to

provide a reasonable accommodation. Without reviewing the rest of the elements of this claim,

Plaintiff's claim fails because the only accommodation she claims she requested is to take a

medical leave. The Michigan Court of Appeals convened a special panel to specifically rule that

the PWDCRA[2] does not require that an employer allow a disabled employee a reasonable time to

heal. *Lamoria v. Health Care & Retirement Corporation*, 233 Mich.App. 560, 562 (Mich.App.

1999). Thus, Plaintiff's requested accommodation was not reasonable and Plaintiff cannot

maintain a claim under the PWDCRA for Defendants' failure to grant her a medical leave.

Defendants are entitled to summary judgment on this claim.

Plaintiff's remaining claim under the PWDCRA is for discrimination. Plaintiff claims

she was terminated because of her panic disorder.

To establish a prima facie case of disability discrimination, a plaintiff must demonstrate

that: (1) she is disabled as defined in the PWDCRA; (2) the disability is unrelated to her ability

to perform the duties of her job; and (3) she was discriminated against in one of the ways

described by the PWDCRA. Defendants argue that Plaintiff is not disabled within the meaning

of the PWDCRA, and that even if her panic disorder was a disability, she cannot establish a

prima facie case because her request for a medical leave of absence demonstrates that it was not

unrelated to her ability to perform the duties of her job.

The PWDCRA defines disability as:

(i) A determinable physical or mental characteristic of an individual, which may
result from disease, injury, congenital condition of birth, or functional disorder, if

---

[2]In 1998, the Handicapper's Civil Rights Act ("HCRA") was changed to the PWDCRA.
For consistency, this opinion refers to the statute as the PWDCRA.

the characteristic:

> (A) For purposes of article 2, substantially limits 1 or more of the major
> life activities of that individual and is unrelated to the individual's ability
> to perform the duties of a particular job or position or substantially limits
> 1 or more of the major life activities of that individual and is unrelated to
> the individual's qualifications for employment or  promotion.
> * * *
>
> (iii) Being regarded as having a determinable physical or mental characteristic
> described in paragraph (i).

MCL § 37.1103(d).  Plaintiff alleges both that she is disabled, and that Defendants regarded her

as disabled. [Complaint, ¶¶ 61-62].

### 1.      Actual Disability

Plaintiff does not offer sufficient evidence that she was disabled within the meaning of

the PWDCRA.  Plaintiff alleges she is disabled because she suffers from a panic disorder.

However, Plaintiff does not offer any evidence that her panic disorder substantially limits any of

her major life activities.  Major life activities have been defined to include "functions such as

caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

learning and working."  *Chiles v. Machine Shop, Inc*., 238 Mich.App. 462, 477 (Mich.App

1999)(citation omitted).  "It is not enough that an impairment affect a major life activity; the

plaintiff must proffer evidence from which a reasonable inference can be drawn that such

activity is substantially or materially limiting."  *Lown v. JJ Eaton Place*, 235 Mich.App. 721,

731 (Mich.App. 1999).  "Thus, a plaintiff seeking to recover under the statute has the burden of

providing some evidence from which a factfinder could conclude that her disability caused

substantial limitations when compared to the average person."  *Id.*

At the hearing Plaintiff alleged that the major life activities of working, sleeping, and

eating were affected.  However, Plaintiff does not offer evidence establishing that these activities

were substantially limited. During deposition, Plaintiff testified that she had "trouble" with her

stomach, but did not elaborate and did not attribute it to her panic disorder. [Response, Exhibit 8,

p.73, Pauley]. Later, she testified that she had gastrointestinal reflex disorder, but again did not

elaborate on how that affected her ability to eat or how it was attributable to her panic disorder.

With respect to her ability to work at the time of the incident, Plaintiff testified that her medical

conditions only affected her ability to work when Sheppard "set her stress levels or panic levels

off." *Id.* at 95. There is no evidence regarding to what extent or with what frequency Plaintiff's

ability to work was impacted by stress, such that her ability to work could be considered

substantially limited by her panic disorder. In fact, Plaintiff does not appear to assert that her

ability to work was substantially limited by her panic disorder. At the hearing, Plaintiff's

counsel argued that Plaintiff was able to work and that even the medical leave she requested was

only temporary. Lastly, there is no evidence that Plaintiff's ability to sleep was substantially

limited by her panic disorder.

Accordingly, Plaintiff fails to establish that she was disabled. Defendants are entitled to

summary judgment on Plaintiff's claim that she was discriminated against based on an actual

disability within the meaning of the PWDCRA.

### 2. Regarded as Disabled

Plaintiff argues in the alternative, that she was regarded as disabled by Defendants. In

order to be "regarded as" having a disability for purposes of the PWDCRA, the plaintiff does not

actually have to have a determinable physical or mental condition. However, the plaintiff must

prove the following elements: (1) the plaintiff was regarded as having a determinable physical or

mental characteristic; (2) the perceived characteristic was regarded as substantially limiting one

or more of the plaintiff's major life activities; and (3) the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion. *Michalski v. Bar-Levav, M.D.*, 463 Mich. 723, 732 (2001).

In this case, Plaintiff testified that Sheppard was aware Plaintiff suffered from a panic disorder when he hired her. [Response, Exhibit 8, p.77, Pauley]. However, Plaintiff does not offer any evidence that Defendants perceived her panic disorder as substantially limiting any of her major life activities. Accordingly, Defendants are entitled to summary judgment on this claim as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  June 11, 2008                                        S/ Sean F. Cox
                                                            Sean F. Cox
                                                            United States District Court Judge

_____

### PROOF OF SERVICE

The undersigned certifies that the foregoing order was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 11, 2008.

                                                            s/Jennifer Hernandez
                                                            Case Manager to
                                                            District Judge Sean F. Cox

11